TAMERA ANN MARKEWICZ,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

             Defendant.

NO.  C17-5331-JPD

ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

Plaintiff Tamera Ann Markewicz appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-year old woman with a ninth grade education.  Administrative Record ("AR") at 42.  Plaintiff was in special education classes in school, and was unable to obtain her GED.  AR at 270, 766.  Her past work experience includes employment as a cleaner, caregiver, cashier, bartender, and seasonal staff

in a shelter, among other things.  AR at 270, 278.  Plaintiff was last gainfully employed at an emergency cold weather shelter in April 2013.  AR at 43, 269.

On February 13, 2014, plaintiff filed claims for DIB and SSI payments alleging a disability onset date of April 30, 2013.  AR at 233-38.  Plaintiff asserts that she is disabled due to spina bifida, chronic obstructive pulmonary disease ("COPD"), post-traumatic stress disorder ("PTSD"), hypertension, and depression.  AR at 103.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 101-130.  Plaintiff requested a hearing, which took place on October 13, 2015.  AR at 38-100.  On February 11, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 20-32.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On May 9, 2017, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Markewicz bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On February 11, 2016, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since April 30, 2013, the alleged onset date.

3. The claimant has the following severe impairments: L5 spondylosis; facet arthropathy; L4-5 central disk protrusion; chronic obstructive pulmonary disease (COPD); irritable bowel syndrome (IBS); post-traumatic stress disorder (PTSD) due to child abuse, domestic violence, and sexual assault; borderline intellectual functioning (BIF); history of alcohol and marijuana use that has not recently been a barrier to a return to work.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for four to six hours in an eight-hour workday. She can sit for six to eight hours in an eight-hour workday. However, she can sit for just one hour at a time, though she would sometimes be able to sit more than that and

sometimes less than that. She can occasionally perform postural movements. She cannot crawl or balance. She cannot work at heights. She cannot work around hazards. She can perform simple repetitive or learned work. She is limited superficial public contact. She cannot work in crowds or around large groups of people. She can have goals but not quotas. She cannot perform security work. She cannot work around drugs or alcohol. She would be off task 6% of the workday. She would be absent from work one hour per month. She cannot perform fast-paced production-rate work.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1975 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.  The claimant has a limited education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2013, through the date of this decision.

AR at 22-32.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.  Did the ALJ err by failing to fully adopt the opinion of Dr. Wingate?

Dkt. 13 at 1; Dkt. 14 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

A.      <u>The ALJ Erred in Evaluating the Opinion of Dr. Wingate and Failing to Discuss
Whether Plaintiff Meets or Equals Listing 12.05(C)</u>

At the conclusion of the administrative hearing, the ALJ advised the parties that he was
referring plaintiff for a comprehensive neuropsychological examination.  AR at 99.  Terrilee
Wingate, Ph.D. performed the consultative psychological examination on December 3, 2015.
AR at 766-72.  After performing a clinical interview, mental status evaluation, and reviewing
plaintiff's medical records, Dr. Wingate administered the Weschler Adult Intelligence Scale –
IV ("WAIS-4"), the Wechsler Memory Scale-4 ("WMS-4"), and the Trail Making Test
("TMT") to evaluate her current cognitive functioning.  AR at 769-70.  Dr. Wingate diagnosed
plaintiff with PTSD, major depressive disorder, mild unspecified neurocognitive disorder
(attention and speed of processing information), moderate alcohol use disorder, mild to
moderate cannabis use disorder, with borderline personality traits.  AR at 770-71.  Dr. Wingate
stated that she did not think plaintiff was "faking bad," and that her test performance probably
reflected her oval cognitive functioning.  AR at 769.  On the WAIS-IV, plaintiff obtained a full
scale IQ score of 66, which is in the extremely low range of intellectual functioning for
plaintiff's age group (the first percentile).[3]  Plaintiff's scores on the WMS-4 and TMT were
similarly in the borderline and/or in the significantly impaired range.  AR at 769-70.

Based upon her examination and testing, Dr. Wingate assessed plaintiff's mental
functioning as follows:

_____

[3] On the verbal comprehension index, plaintiff scored a 70, which is in the borderline
range (second percentile).  AR at 769.  Plaintiff obtained similarly low scores in the borderline
range on the perceptual reasoning index (which measures nonverbal reasoning abilities), and
working memory index (ability to sustain attention and concentration and exert mental
control).  AR at 769.  Plaintiff also received a score of 65, which is in the extremely low range
(first percentile) on the processing speed index.  AR at 769.

> She is able to understand, remember and learn simple tasks, but she has some difficulty learning most complex tasks. She cannot sustain attention to tasks throughout a daily or weekly work schedule due to concentration problems, compounded by anxiety, depressed mood, and fatigue. She has poor stress tolerance and when pressures are placed upon her she will withdraw. She has sufficient judgment to avoid hazards but she would need supervision to make appropriate work decisions. She can probably accept direction from a supervisor, but she would have difficulty interacting with coworkers. She would probably not work well with the general public.

AR at 771-72.

The ALJ summarized Dr. Wingate's opinion, including the fact that plaintiff "can understand, remember, and learn simple tasks," but "has a poor stress tolerance and when pressures are placed upon her she will withdraw. However, she stated the claimant has sufficient judgment to avoid hazards, with appropriate supervision." AR at 30. "[S]he also stated the claimant can probably accept direction from a supervisor, though she would not work well with the public." AR at 30. The ALJ opined that "[g]iven all of these abilities, and the claimant's satisfactory performance on the testing and consultative examination, Dr. Wingate curiously also commented that the claimant would probably not be able to sustain attention to tasks throughout a daily or weekly work schedule." AR at 30. The ALJ stated that Dr. Wingate had the opportunity to meet with and to examine the claimant, "however, she is the only source who performed a thorough examination who reached this conclusion. Yet it is not consistent with the claimant's performance during the testing and mental status examination, and it is also not consistent with the conclusions of the State agency psychological consultants or consultative examiner Dr. Rogers." AR at 30. For these reasons, the ALJ gave Dr. Wingate's opinion "little weight." AR at 30.

The ALJ's reasons for rejecting Dr. Wingate's opinion regarding plaintiff's inability to sustain attention throughout the workday and workweek are not specific, legitimate, or

supported by substantial evidence in the record. First, the ALJ's conclusory assertion that "the claimant's satisfactory performance on the testing and consultative examination" indicated that she would also be able to "sustain attention to tasks throughout a daily or weekly work schedule" is not supported by substantial evidence in the record. Although the ALJ mentioned that Dr. Wingate had conducted some sort of testing, the ALJ fails to acknowledge or discuss any of Dr. Wingate's actual findings. AR at 27, 30. Instead, the ALJ appears to have erroneously assumed, by virtue of the fact that plaintiff completed Dr. Wingate's testing, that plaintiff has the ability to concentrate and sustain attention at a level sufficient to perform full-time work. It was harmful error for the ALJ to reject Dr. Wingate's opinion as unfounded without any explanation of her test results, especially because Dr. Wingate was the only medical source to have performed such psychological testing (and in fact, did so at the ALJ's request). AR at 99-100. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (an ALJ's statement that medical opinions are not supported by sufficient objective findings does not achieve the required level of specificity, as the ALJ must do more than offer his own conclusions without explaining why his own interpretation is correct). As noted above, plaintiff obtained a full range IQ score of 66, which is in the extremely low range of intellectual functioning. AR at 769. In addition, during testing, plaintiff's "ability to sustain attention, concentrate, and exert mental control [was] in the borderline range." AR at 769. The ALJ's failure to discuss these test results, and show they related to Dr. Wingate's opinion that "she cannot sustain attention to tasks throughout a daily or weekly work schedule due to concentration problems, compounded by anxiety, depressed, mood, and fatigue," was harmful error. AR at 30, 771.

In addition, the ALJ's rejection of Dr. Wingate's opinion regarding plaintiff's limited ability to sustain attention to tasks throughout the workday and workweek on the grounds that

it was inconsistent with the opinions of W. Michael Rogers, Psy.D. and the State agency psychological consultants, and Dr. Wingate "is the only source who performed a thorough examination who reached this conclusion," was not specific and legitimate.  AR at 30.  Dr. Rogers' May 2014 psychological evaluation consisted of a clinical interview and a mental status examination.  AR at 482-86.  He did not review any records or perform psychological testing like Dr. Wingate, who administered the Wechsler Adult Intelligence Scale-IV, Wechsler Memory Scale, and Trail Making Test.  Moreover, the state agency psychological consultants never even met, let alone examined, the plaintiff.  AR at 30.  As noted above, it is not at all clear why the ALJ believes that Dr. Wingate's opinion "is not consistent with the claimant's performance during the testing and mental status examination."  AR at 30.  Plaintiff scored in the significantly impaired range (below the first percentile) on the TMT, which measures visual attention and ability to shift attention, and had similar low scores on the components of the WAIS-IV subtests that measured her attention and concentration.  AR at 769-70.  The ALJ failed to discuss any of Dr. Wingate's test results.  Moreover, the ALJ failed to account for (or give reasons for rejecting) Dr. Wingate's opinion that plaintiff would need supervision to make appropriate work decisions, and have difficulty interacting with co-workers.  AR at 30.

Presumably because the ALJ rejected Dr. Wingate's opinion, the ALJ found that plaintiff did not have a severe cognitive disorder at step two of the sequential evaluation process.  AR at 23.  This, in turn, caused him to fail to consider whether plaintiff met Listing 12.05(C).  This was also harmful error in this case, as plaintiff's performance during Dr. Wingate's testing suggests that she most likely satisfies this Listing.

To satisfy Listing 12.05C (Intellectual Disability), a claimant must satisfy the following three requirements:

(1)     Significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of impairment before age 22;

(2)     A valid verbal, performance, or full scale IQ score of 60 to 70; and

(3)     A physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C; *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013).[4]

As discussed above, Dr. Wingate's testing resulted in a full scale IQ score of 66, which falls well within in the required range to satisfy the Listing.  AR at 769.  The ALJ also found, at step two, that plaintiff has several other "severe" impairments, AR at 22, which satisfies the Listing requirement of "an additional and significant work-related limitation of function."  *See Fanning v. Bowen,* 827 F.2d 631, 633 n.3 (9th Cir. 1986) (holding that an impairment satisfies this requirement when its impact on a claimant's ability to perform basic work activities is more than slight or minimal, and a step 2 finding of a severe impairment satisfies this test).

The only remaining question is therefore whether there is sufficient evidence of deficits of adaptive functioning manifesting during the developmental period, i.e., prior to age 22.  The Commissioner contends that plaintiff has not made a sufficient showing to satisfy

_____

[4] In recent revisions to the listings for mental disorders, effective January 17, 2017, the Social Security Administration (SSA) removed paragraph C from Listing 12.05. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). Revised Listing 12.05B requires: (1) either a full scale IQ of 70 or below or a full scale IQ of 71-75 with a verbal or performance IQ of 70 or below; (2) significant deficits in adaptive functioning "currently manifested" by extreme limitation of one or marked limitation of two areas of mental functioning; and (3) evidence about "current intellectual and adaptive functioning" and the history of the disorder demonstrates or supports the conclusion it began prior to age 22. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05B.  *See also* Listing 12.00H(1).  The Court presumes that former Listing 12.05 continues to apply to plaintiff's case, because plaintiff's case was pending when the regulatory change took effect.

this third requirement.  The Commissioner points out that on the Disability Report, plaintiff reports that she only attended one year of special education classes in elementary school.  Dkt. 14 at 4 (citing AR at 270).  In addition, the ALJ found that plaintiff has only mild restrictions in daily living, demonstrating that she is able to live an independent life and therefore does not satisfy the Listing requirement.  *Id.* (citing AR at 23).  However, plaintiff reported to Dr. Wingate that she was in special education classes "throughout school" and was pulled from the classroom for one-on-one assistance as needed.  AR at 766.  She further testified at the hearing that she did not graduate the ninth grade, and was unable to pass the requisite tests to obtain her GED.  AR at 42.  Although she could add and subtract, she could not multiply and divide.  AR at 42.  It is the role of the ALJ to resolve such factual disputes in the first instance.  However, as noted above, the ALJ failed to discuss any of this evidence, or consider whether plaintiff satisfied the Listing requirements.

Accordingly, this case must be remanded for the ALJ to reevaluate Dr. Wingate's opinion in light of the direction provided by this Order.  In particular, the ALJ shall discuss Dr. Wingate's test results, which strongly suggest that plaintiff meets Listing 12.05(C) (and potentially Listing 12.05(D)) and is entitled to an award of benefits.  The ALJ shall re-evaluate the medical opinion evidence, reassess plaintiff's RFC, and discuss the relevant Listings.

B.      On Remand, the ALJ Shall Also Re-Evaluate Plaintiff's Testimony

Finally, the Court notes that in finding plaintiff's hearing testimony less than fully credible, the ALJ not only relies on plaintiff's inconsistent statements regarding her substance abuse, but cites the fact that plaintiff has failed to quit smoking as a reason for rejecting her testimony.  The ALJ can reasonably point out that plaintiff's hearing testimony regarding the amount of alcohol she drinks and whether she continues to use cannabis was inconsistent with

her report to Dr. Wingate that "she consumes a few alcoholic drinks every day and . . . she uses cannabis." AR at 28. However, the ALJ in this case went further and found that "though she has been counseled by treating sources to cease tobacco use during the entire period at issue, the claimant has declined to do so at every turn, and she continues to smoke to this day. The claimant has a respiratory impairment as a result. Someone who is motivated to return to work would logically not continue such self-destructive behavior." AR at 28. The ALJ concluded, based upon plaintiff's smoking, that "[i]t does not appear that she has any interest in improving her condition so that she can go back to work on a full time, regular and continuing basis." AR at 28.

Federal courts in this Circuit and others have held that a claimant's failure to comply with a recommendation to quit smoking is an unreliable basis on which to rest a credibility determination. *See Shramek v. Apfel,* 226 F.3d 809, 813 (7th Cir. 2000) ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health."). Even though plaintiff's smoking may have contributed to her symptoms, the fact that she did not quit as recommended by her doctors does not necessarily undermine her credibility. On remand, although the ALJ may discuss any inconsistent statements made by the plaintiff, he shall not concludes that her failure to quit smoking is a clear and convincing reason for rejecting plaintiff's testimony.

VIII.    CONCLUSION

For the foregoing reasons, this case is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

The ALJ shall reevaluate the medical opinion of Dr. Wingate, plaintiff's testimony, discuss whether plaintiff meets or equals the Listings, and proceed through the remaining steps in the sequential evaluation process.[5]

DATED this 5th day of October, 2017.

*James P. Donohue*
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

---

[5] The Court presumes that further administrative proceedings in this case would include reassessment of whether plaintiff meets or equals either former Listing 12.05(C) or revised Listing 12.05, and that plaintiff's claim would be granted if it satisfied either version. *See Pasco v. Berryhill*, Case No. C16-5669-JCC-MAT (Dkt. 18) (advising the Court that plaintiff's claim shall be considered in relation to former Listing 12.05(C) as well as amended Listing 12.05, and the Commissioner will "grant the claim if it would satisfy the requirements of either former Listing 12.05C or amended Listing 12.05, due to the intervening change in the regulations."). If plaintiff's claim will not be considered in relation to both former Listing 12.05(C) and amended Listing 12.05 on remand, however, the Commissioner is directed to advise the Court within **seven (7) days** of the date of this Order.